**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **Richard Canter** and **Kelly Basilio**, on behalf of themselves and others similarly situated, | : : : : | |
| Plaintiffs, | : : | **CASE NO. 2:23-cv-1037** |
| v. | : : : : | **JUDGE EDMUND A. SARGUS, JR.** |
| **Omega Healthcare Services, Inc.,** et al. | : : | **MAGISTRATE JUDGE KIMBERLY A. JOLSON** |
| Defendants. | : : : : | **JOINT MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT AND BRIEF IN SUPPORT** |

Representative Plaintiffs Richard Canter ("Canter" or "Representative Plaintiff Canter") and Kelly Basilio ("Basilio" or "Representative Plaintiff Basilio") and Defendants Omega Healthcare Services, Inc. ("Omega"), and Esther Bervelyn Acheampong ("Acheampong") (collectively, "Defendants") (collectively Representative Plaintiffs and Defendants will be referred to as the "Parties") respectfully and jointly move this Court for an Order approving their Fair Labor Standards Act ("FLSA") settlement. The settlement was reached by experienced wage and hour counsel during arms-length, good faith negotiations at mediation following individualized damages analysis.

The following documents are submitted for the Court's approval:

**Exhibit 1**: Collective Action Settlement Agreement and Release (the "Agreement")[1] with the following Exhibit:

**Exhibit 1-A**: Notice of Settlement of Collective Action Lawsuit and Consent Form and Release.

---

[1] Unless otherwise noted, all capitalized words and phrases used throughout this motion and brief shall have the same meaning as set forth in the Collective Action Settlement Agreement and Release.

Page **1** of **14**

> **Exhibit 2**: Declaration of Peter Contreras (hereinafter "Contreras Decl."); and
>
> **Exhibit 3**: Proposed Stipulated Order Granting Joint Motion for Approval of Collective Action Settlement and Dismissal with Prejudice.

## MEMORANDUM IN SUPPORT

I. **FACTUAL AND PROCEDURAL BACKGROUND**

    A. **Summary of the Claims and Procedural History**

On March 22, 2023, Representative Plaintiffs filed this case (the "Lawsuit" or the "Action") against Defendants on behalf of themselves and other allegedly similarly situated current and former healthcare employees. Compl., ECF No. 1; Contreras Decl., Ex. 2, ¶6.

In the Action, Representative Plaintiffs alleged that they and other hourly Home Health Aides ("HHA") were not paid overtime wages for all hours worked over 40 per week in violation of the Fair Labor Standards Act, §§ 201, *et seq.* Specifically, Representative Plaintiffs alleged that they and other hourly employees were not compensated for all hours worked over 40 per week with payment of overtime wages because Defendants tracked the hours worked at different pay rates separately for purposes of computing overtime hours worked and overtime wages owed. Compl., ECF No. 1, ¶¶ 34-40; Contreras Decl., Ex. 2, ¶7. Defendants allegedly failed to combine all hours worked by Representative Plaintiffs and other similarly situated HHA's each workweek for all rates of pay to compute total overtime hours worked each week as required by the FLSA. Compl., ECF No. 1, ¶¶ 34-40; Contreras Decl., Ex. 2, ¶8. Defendants deny these allegations and assert that they properly paid their hourly employees, including Representative Plaintiffs, for all hours worked.

After filing the Action, Defendants' counsel advised that the Department of Labor ("DOL") had previously investigated Defendants pay practices in 2022 and found violations of the FLSA and Ohio Wage Act. The DOL investigation analyzed Defendants' operations for the period of

September 16, 2020 through September 17, 2022 ("Investigation Period"). Following the investigation, monetary violations were found resulting in back wages owed for the Investigation Period to thirty-two (32) employees of Defendants totaling $52,946.83. On January 17, 2024, Representative Plaintiffs amended their Complaint to exclude the pay violations for the Investigation Period only. Amended Compl., ECF No. 22, ¶¶ 48-52; Contreras Decl., Ex. 2, ¶9. Violations that both preceded and followed the DOL Investigation Period were then pursued on behalf of Representative Plaintiffs and all similarly situated HHA's.

Prior to engaging in settlement discussions at mediation, Defendants provided time and compensation records for Representative Plaintiffs and other hourly employees that Representative Plaintiffs contend are similarly situated, to wit, all current and former hourly employees of Defendants who were paid for 40 or more hours of work in one or more workweeks beginning 3 years prior to the filing of this lawsuit and continuing through final disposition of this case for any workweeks in the Covered Period.[2] Contreras Decl., Ex. 2, ¶ 11. Defendants additionally provided documentation and pay records relating to the DOL Investigation and the payments Defendants made at the conclusion of such investigation. *Id.* Class Counsel performed an individualized damages analysis using this information. Contreras Decl., Ex. 2, ¶ 12. After attending mediation and engaging in settlement negotiations through their respective counsel, the Parties were ultimately able to reach a resolution. Contreras Decl., Ex. 2, ¶ 12.

In addition to Representative Plaintiffs, Lisa Flores joined the case on June 20, 2023. ("Current Opt-In Plaintiff(s)"). Notice of Filing Consent, ECF No. 9.

**B.** **Summary of the Key Settlement Terms**

---

[2] As provided in the Settlement Agreement, the "Covered Period" refers to the period from March 22, 2020 through the date of approval of the Settlement through the Approval Order, with the exception of the DOL Investigation Period of September 16, 2020 through September 17, 2022.

The total settlement amount is $62,000. This amount includes: (a) all potential individual settlement payments to twenty-one (21) Eligible Settlement Participants,[3] inclusive of Representative Plaintiffs and Current Opt-In Plaintiff; (b) a service award of $2,500.00 to each Representative Plaintiff for their services in bringing and prosecuting this Action; and (c) Class Counsel's attorneys' fees and litigation expenses.

A Notice of Settlement (attached to the Agreement) and Consent Form and Release ("Consent Form") will be sent to the Eligible Settlement Participants. Eligible Settlement Participants who timely complete, sign, and submit a valid and timely Consent Form, which will be filed with the Court by Class Counsel, will become Claimants. Only those Eligible Settlement Participants who join the settlement by timely submitting a Consent Form will be bound by the Agreement. Contreras Decl., Ex. 2, ¶ 14, fn. 1.

The potential Settlement Awards are proportional to the total calculated alleged damages for an alleged 3-year statute of limitations for each Eligible Settlement Participant. The Settlement Awards include: (1) a potential payment for 100% of the damages related to the alleged unpaid overtime; and (2) a potential *pro rata* payment for liquidated damages and OPPA damages. This type of allocation is commonly used in class and collective action settlements. *Id.*, ¶17. This recovery is fair and reasonable given the facts and circumstances of this case. *See Vigna v. Emery Fed. Credit Union*, No. 1:15-cv-51, 2016 WL 7034237, at *4-5 (S.D. Ohio Dec. 2, 2016) (approving a settlement that represented approximately 55% of allegedly owed wages); *See Smith v. SAC Wireless, LLC*, No. 20-10932, 2022 WL 1744785, at *3 (E.D. Mich. May 31, 2022) (citing *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1609, 2010 WL 776933, at *8 (N.D. Ohio

---

[3] Eligible Settlement Participants will receive a settlement payment if they timely submit a consent form, which will be filed with the Court, as outlined in the Collective Action Settlement Agreement and Release. Those who do not submit a timely consent form will not release their claims and will not receive their potential Settlement Award.

Mar. 8, 2010)).

In exchange for the total settlement amount payment and other consideration provided for in the Agreement, this Lawsuit will be dismissed with prejudice, and the Claimants (including Representative Plaintiffs and Current Opt-In Plaintiff) who timely submit a Consent Form will release Defendants from federal, state, and local wage-and-hour claims, rights, demands, liabilities and causes of action that were asserted, or could have been asserted, in the Lawsuit. Contreras Decl., Ex. 2, ¶18.

**II.     PROPRIETY OF APPROVAL OF THE SETTLEMENT.**

The Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. Court approval is warranted on all scores.

    **A.     Satisfaction of 7-Factor Standard**

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 216(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Enters., Inc.*, No. C2-05-500, 2008 WL 2468868, at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353–55 (11th Cir. 1982).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, No. 06-299-JBC, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven (7) factors to evaluate class action settlements, which are:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983)), *Crawford*, 2008 WL 4724499, at *3.

The settlement in this Action satisfies each of these elements.

1. *No Indicia of Fraud or Collusion Exists.*

There is no indicia of fraud or collusion, and "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *Bailey v. Black Tie Mgmt. Co. LLC*, No. 2:19-cv-1677, 2020 WL 4673163, at *2 (S.D. Ohio Aug. 12, 2020) (Sargus, J.) (quoting *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)). The Agreement was achieved only after arm's-length and good faith negotiations between the Parties at mediation with a neutral third-party mediator. Contreras Decl., Ex. 2, ¶ 19. As such, there is no indicia of fraud or collusion, and this factor favors approval of the Settlement.

2. *The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval.*

The policy favoring settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. *See Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018) (Watson, J.) (internal quotation marks and further citation omitted) ("[M]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them.").

If this Action had not settled, the Parties would be required to engage in costly litigation, such as briefing on class certification, formal written discovery, depositions, dispositive motions, trial, and potential appeals. The Settlement, on the other hand, provides substantial relief to the

Eligible Settlement Participants promptly and efficiently and amplifies the benefits of that relief through the economies of collective resolution. Contreras Decl., Ex. 2, ¶20-22.

        3.        *Investigation Was Sufficient to Allow the Parties to Act Intelligently.*

The Parties engaged in substantial investigation and analysis prior to negotiating the Settlement at mediation. Specifically, Defendants produced all necessary payroll and timekeeping information for the Eligible Settlement Participants. Defendants additionally produced pay and time records resulting from the DOL Investigation. Class Counsel built a damages model, which was instrumental in guiding Representative Plaintiffs' negotiations. *Id.*, ¶¶11–12.

In addition, the Parties assessed their potential risk of loss. Thus, the legal and factual issues in the case were thoroughly researched by counsel for the Parties, and all aspects of the dispute are well understood by both sides.

        4.        *The Risks of Litigation Favor Approval.*

The settlement represents a compromise of disputed claims. Specifically, Representative Plaintiffs allege that they and other hourly employees were not compensated for their overtime hours worked as required. On the other hand, Defendants deny these allegations and assert that they fully compensated their hourly employees for all time worked.

The Parties also disagree about whether the 2-year limitations period for non-willful violations or 3-year limitations period for willful violations applies, whether liquidated damages are appropriate, and whether the claims alleged can proceed collectively. *Id.*, ¶21.

Accordingly, if this Action had not settled, it is possible that there would be no recovery for the Eligible Settlement Participants at all. *Id.*, ¶ 25.

        5.        *The Opinion of Representative Plaintiffs' Counsel Favor Approval.*

Class Counsel is highly experienced in wage-and-hour collective and class actions. At all times, they have acted in good faith and have vigorously represented the interests of the Eligible

Settlement Participants, which include Representative Plaintiffs and Current Opt-In Plaintiff. Importantly, Class Counsel opines that the settlement is fair, reasonable, adequate, and in the best interests of Representative Plaintiffs, Current Opt-In Plaintiff, and Eligible Settlement Participants *Id.*, ¶¶21-25. "The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference." *Wright*, 2018 WL 3966253, at *5 (further citation omitted). Accordingly, this factor favors approval of the settlement.

      6.    *The Reaction of Absent Class Members Favors Approval.*

If the Court approves the settlement, the Eligible Settlement Participants will receive a Notice of Settlement and Consent Form. They will be given the option to join the Settlement by timely submitting their signed Consent Form. Only those Eligible Settlement Participants who join the Settlement by timely submitting their signed Consent Form will be bound by the Agreement. Those Eligible Settlement Participants who do not join the Settlement will not receive their potential Settlement Award, and they will retain the right to pursue their own claims. Contreras Decl., Ex. 2, ¶14, fn. 1.

      7.    *The Public Interest Favors Approval.*

"Public policy generally favors settlement of class action lawsuits." *Wright*, 2018 WL 3966253, at *5 (quoting *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007)) (internal quotation marks omitted). Like in *Wright*, "the Settlement confers immediate benefits on the [Eligible Settlement Participants], avoids the risks and expense in further litigation, and conserves judicial resources." *Id.* Thus, as in *Wright*, the Court should find that this factor supports approval of the Settlement.

      A.    **The Settlement Distributions Are Fair, Reasonable, and Adequate.**

In addition to evaluating the seven (7) factors discussed above, the Court must also "ensure that the distribution of the settlement proceeds is equitable." *Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 WL 4721208, at *6 (S.D. Ohio Sept. 9, 2016) (Marbley, J.) (internal quotation marks and further citation omitted).

1. *The Individual Payments Are Reasonable and Adequate.*

As part of their pre-settlement evaluation leading up to mediation, Class Counsel engaged in a comprehensive individualized analysis of the class data and DOL Investigation time and payment records provided by Defendants' Counsel. Alleged damages were calculated for the alleged violations in workweeks that Eligible Settlement Participant worked forty (40) or more hours. The potential Settlement Awards include: (1) a potential payment for 100% of the damages related to the alleged pay violations during qualifying weeks; and (2) a potential *pro rata* payment for liquidated damages and OPPA damages. The total amount owed was settled upon as reasonable based on the information learned during settlement discussions and informal discovery. Contreras Decl., Ex. 2, ¶12. This recovery is fair and reasonable given the facts and circumstances of this case. *See Vigna v. Emery Fed. Credit Union*, No. 1:15-cv-51, 2016 WL 7034237, at *4-5 (S.D. Ohio Dec. 2, 2016) (approving a settlement that represented approximately 55% of allegedly owed wages); *see Smith*, 2022 WL 1744785, at *3 (citing *Dillworth*, 2010 WL 776933, at *8) (finding a recovery to be "fair and reasonable" where it "greatly exceed[ed] the typical 7-11% recovery in FLSA cases[]"); *see also Yorba v. Barrington Sch., LLC*, No. 2:21-cv-691, 2022 WL 2436952, at *5 (S.D. Ohio July 5, 2022) (Sargus, J.) (discussing *Smith*, 2022 WL 1744785, at *3) (referencing the same typical recovery of 7-11% in FLSA cases).

All Settlement Awards will be calculated proportionally. Contreras Decl., Ex. 2, ¶17. As such, each Eligible Settlement Participant will have the opportunity to obtain compensation for

alleged unpaid wages that are proportional to the damages calculated by Class Counsel for each Eligible Settlement Participant.

        2.      *Representative Plaintiffs' Service Award is Proper and Reasonable.*

The Agreement provides for a Service Award of $2,500 to each Representative Plaintiff in addition to their individual payments, for a total of $5,000 in Service Awards for the two (2) Representative Plaintiffs. Contreras Decl., Ex. 2, ¶¶14-15. Courts routinely approve service awards to named plaintiffs in class and collective action litigation because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 WL 6485159, at *8 (S.D. Ohio Dec. 3, 2019) (Vascura, M.J.) (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)) (internal quotation marks omitted). Service awards are meant to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Id.* (quoting *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010)) (internal quotation marks omitted).

Here, Representative Plaintiffs contributed significant time, effort, and detailed factual information, including traveling to Columbus to attend mediation, enabling Class Counsel to evaluate the strength of this case and reach the present Settlement. Contreras Decl., Ex. 2, ¶ 15.

        3.      *The Attorneys' Fees to Class Counsel Are Proper and Reasonable.*

After the Court has confirmed that the terms of the Settlement are fair to the Eligible Settlement Participants, it may review the Agreement as to the provision of fees and litigation expenses to Class Counsel.

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins*, the Sixth Circuit held that the FLSA's mandatory

attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied*, 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984)).

The Agreement provides a payment of attorneys' fees to Class Counsel in the amount of one-third (1/3) of the total settlement amount, i.e., $20,666.67. A one-third fee award is "typical for attorney's fees in common fund, FLSA collective actions in this District[.]" *Hebert v. Chesapeake Operating, Inc.*, No. 2:17-cv-852, 2019 WL 4574509, at *8 (S.D. Ohio Sept. 20, 2019) (Morrison, J.). This "is a normal fee amount in a wage and hour case." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376, at *5 (S.D. Ohio Nov. 25, 2019) (Rice, J.) (citing *Carr v. Bob Evans Farms, Inc.*, No. l:17-cv-1875, 2018 WL 7508650, at *4 (N.D. Ohio July 27, 2018)); *see also Ganci*, 2019 WL 6485159, at *7 (approving an award of one-third of a settlement fund in a wage and hour case); *Call v. CTA Pizza, Inc.*, No. 2:18-cv-00696, 2019 WL 5307071, at *5 (S.D. Ohio Oct. 21, 2019) (Marbley, J.) (same); *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 WL 1614822, at *7 (N.D. Ohio Mar. 26, 2019) (same); *Wright*, 2018 WL 3966253, at *8 (same); *Osman v. Grube, Inc.*, No. 3:16-cv-00802, 2018 WL 2095172, at *5 (N.D. Ohio May 4, 2018) (same); *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09CV1608, 2010 WL 2490989, at *8 (N.D. Ohio June 15, 2010) (same).

Class Counsel accepted this case on a contingent fee basis and advanced all litigation fees, costs, and expenses. Thus, Class Counsel "assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci*, 2019 WL 6485159, at *7.

Finally, courts in this district acknowledge that "wage and hour class and collective actions, such as this, are inherently complex and time-consuming." *Brandenburg*, 2019 WL 6310376, at *3 (further citation omitted). Given the inherent complexity of a wage and hour collective action and the disputed issues of fact and law in this case, an award of one-third of the settlement fund appropriately compensates Class Counsel for its prosecution of this case and advances the public's interests in rewarding attorneys who bring wage and hour cases. *See, e.g.*, *Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 WL 2532922, at *4 (S.D. Ohio June 24, 2011) (Black, J.) ("[S]ociety has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

    4. *The Court Should Authorize Reimbursement to Class Counsel of Its Out-of-Pocket Expenses Incurred in this Case.*

Class Counsel should also be reimbursed their litigation expenses, which as of the date of this Joint Motion are $402. Contreras Decl., Ex. 2, ¶ 28.

"Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Brandenburg*, 2019 WL 6310376, at *7 (further citation omitted). In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id.* (further citation omitted). Because Class Counsel's litigation expenses were incurred in the prosecution of the claims in this case and in obtaining settlement, the Court should award reimbursement of these expenses to Class Counsel.

### III. CONCLUSION

The Parties submit that this Settlement is a fair and reasonable resolution of the disputed issues, which is consistent with the goal of securing the just, speedy, and inexpensive determination of every action. Accordingly, the Parties request that this Court: (1) enter the

Proposed Order Granting Joint Motion for Approval of Collective Action Settlement and Dismissal with Prejudice; (2) approve Class Counsel's request for attorneys' fees and expenses; (3) approve the requested service payments to Representative Plaintiffs; and (4) retain jurisdiction to enforce the settlement if necessary. The Parties also acknowledge that Representative Plaintiffs' claims brought under the Ohio Wage Act brought pursuant to Rule 23, which were not certified by this Court, are being dismissed without prejudice, noting that while Representative Plaintiffs, Current Opt-In Plaintiff and Claimants who worked in Ohio have released all Ohio Wage Act claims against Defendants through this Settlement Agreement, no other Eligible Settlement Participant who declines to participate in this Settlement has released any claims against Defendants nor have they received any consideration with regard to these claims.

Respectfully submitted,

**CONTRERAS LAW, LLC**

*/s/ Peter A. Contreras*
Peter Contreras (0087530)
1550 Old Henderson Road
Suite 126
Columbus, Ohio 43220
Phone: 614-787-4878
Fax: 614-957-7515
Email: peter.contreras@contrerasfirm.com

*Attorneys for Named
Plaintiff and similarly
situated employees*

*/s/ Brian M. Garvine*
BRIAN M. GARVINE (0068422)
Law Office of Brian M. Garvine, LLC
5 East Long Street, Suite 1100
Columbus, OH 43215
614.223.0290 Fax: 614.221.3201
Email: brian@garvinelaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of May 2024, a true and accurate copy of the forgoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Peter A. Contreras*
Peter Contreras (0087530)
